David N. Chandler, Sr.  SBN 60780
David N. Chandler, Jr.  SBN 235427
DAVID N. CHANDLER, p.c.
1747 Fourth Street
Santa Rosa, CA  95404
Telephone: (707) 528-4331

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE:                          CASE No. 08-12710

TRUE SPIRITS, LLC,              CHAPTER 11

                                AMENDED
____Debtor._____/          DISCLOSURE STATEMENT


                                I

   A.   INTRODUCTION.

   True Spirits, LLC, hereafter referred to as "Debtor" submits this Disclosure Statement to all of its known creditors and interest holders entitled to same pursuant to section 1125 of the United States Bankruptcy Code 11 U.S.C. section 101, et seq. ("the bankruptcy code").  The purpose of this Disclosure Statement is to provide creditors of the debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Debtor's Chapter 11 Plan(the "Plan") described below.  The Debtor's Chapter 11 Plan has been filed with this Court.

   NO REPRESENTATIONS CONCERNING THE DEBTOR (INCLUDING THE VALUE OF ASSETS, ANY PROPERTY AND CREDITORS CLAIMS)INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED.  Except as otherwise expressly stated, the portions of this Disclosure Statement

1

describing the Debtor and the Plan have been prepared from information obtained from the Debtor.

Under the Plan, Secured claims, to the extent allowed as secured claims pursuant to 11 U.S.C. Section 506, and to the extent of the validity of the security interest is determined by the Court and not otherwise avoidable will be paid in full. Unsecured claims shall be paid the aggregate sum of $248,000 in 84 equal monthly installments without interest. The Plan provides that the amount to be distributed under the Plan to holders of allowed unsecured claims is estimated at 30%.

A Chapter 7 liquidation could take up to three years before distribution is made, if any, and additional Administrative expenses would be incurred. Tax consequences of liquidation, expenses of sale, professional fees and trustee's fees are administrative expenses in a Chapter 7 liquidation and paid before prepetition claims are paid. Administrative expenses of Chapter 11 are also paid prior to payment of prepetition claims.

B. <u>FILING OF REORGANIZATION CASE</u>.

On December 17, 2008, the Debtor filed its petition pursuant to Chapter 11 of the Bankruptcy Code. Since that time the Debtor has remained in possession of the property as debtor in possession.

C. <u>MANNER OF VOTING</u>.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be sent to the Debtor's counsel prior to the date set by the Court for the filing of such ballots.

D.  CONFIRMATION OF THE PLAN.

  1.  Solicitation of Acceptance.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with section 1125 of the bankruptcy code and is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a Proof of Claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. The Disclosure Statement is intended to assist creditors and interest holders in evaluating the Plan and in determining whether to accept the Plan. Under the bankruptcy code, acceptance of the Plan may not be solicited unless a copy of this Disclosure Statement is received prior to or concurrently with such solicitation.

  2.  Persons Entitled to Vote on Plan.

Only the votes of Classes of claimants and interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally and subject to the specific provisions of bankruptcy code section 1124, this includes creditors who, under the Plan, will receive less than payment in full of their creditor's claims.

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the debtor, as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation, has filed with the court a Proof of Claim which has not been disallowed or suspended prior to computation of the votes on the Plan. The Ballot form which you receive does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled,

3

you should review the Debtor's schedules which are on file in the Bankruptcy Court. The clerk of the Bankruptcy Court will not provide this information by telephone.

    3. <u>Hearing on Confirmation of the Plan.</u>

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and interest holders and whether the other requirements of confirmation of the Plan have been satisfied. Each creditor and interest holder will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

    4. <u>Acceptance Necessary to Confirm Plan.</u>

At the scheduled hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each impaired Class. Under bankruptcy code section 1125 an impaired Class is deemed to have accepted the Plan if at least two thirds in amount and more than one-half in number of the allowed claims or interest of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired Class, the Bankruptcy Court must also determine that under the Plan Class members will receive property of a value, as of the effective date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the effective date of the Plan.

    5. <u>Confirmation of the Plan Without Necessary Acceptance.</u>

The Plan may be confirmed even if it is not accepted by one or

4

all of the impaired Classes, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such Class or Classes.

II

A. <u>DESCRIPTION OF DEBTOR AND HISTORICAL BACKGROUND</u>.

True Spirits, under the name of Cahill Winery, has been providing winemaking services and producing wine for more than four years. Harvests for 2007 and 2008 were light which reduced the demand for services causing a strain on the debtor's income. Concentration has been focused on production as the demand for services declined.

The winery was started by Donald Payne, Michael Giacomini and Mark Cidio. Mr. Cidio has since left the organization. The initial equity participants were unable to contribute equity as originally contemplated and loans were taken from relatives for the start up of the company.

The current products include bottled and bulk wines which are sold by the Debtor on wholesale and retail markets. Also included are *niche* products, i.e., dessert wine, port, and 24 DEGREES. 24 DEGREES is a unique premium wine product used by restaurants without full bars to prepare mixed drinks. The Debtor's winery is permitted for production of 40,000 cases annually. An additional 12 acres on the property has been cleared and is available for planting in the Green Valley Appellation.

The Debtor continues to produce wines and related products and provide custom services for winemaking. The Monthly Operating Reports do not reflect sufficient sales to enable the Debtor to perform under the terms of the Plan. Debtor believes that it will

5

produce sufficient revenue through sales of product as well as its custom crushing business. Debtor currently has 150 tons of grapes under contract for custom crushing services. The *24* product is with four different distributors in five states. The Debtor's wine is with a number of retailers and restaurants as well as distributors through which it believes the market in China will be opened for its products, including *24*. The products are represented by 5 sales representatives in California. Between 3,000 and 4,000 cases will be produced in 2010 of branded wine in 2010 with a portion being exported to China. Preliminary projections prepared by a business consultant project favorable results as to profitability under the Plan as proposed. Debtor has a marketing plan in place. The Debtor, however, is not certain that the Plan will be successful, but believes that it will.

First Community Bank, through counsel has requested further documentation which could relate to its anticipated objection to confirmation based upon feasibility. Debtor has no further documentation, other than proprietary documents, relating to current marketing strategies. The economic environment is a factor in the ultimate prospects for the Debtor's marketing strategy.

B. <u>THE PLAN.</u>

The Plan divides claims and interests into eleven (11) classes. The classes consist of the following:

<u>Class 1 Claims.</u> Allowed claims entitled to priority pursuant to Section 507 of the Code.

<u>Class 2 Claims.</u> Allowed secured claims of the County of Sonoma based upon the secured tax roll

<u>Class 3 Claims.</u> Allowed secured claim of First Community Bank

6

secured by real property located at 4950 Ross Rd., Sebastopol, California.

  Class 4 Claims. Allowed secured claim (2nd) of Bay Area Development secured by real property located at 4950 Ross Rd., Sebastopol, California.

  Class 5 Claims. Allowed secured claim (3rd) of Roger Gadow secured by real property located at 4950 Ross Rd., Sebastopol, California.

  Class 6 Claims. Allowed secured claim (4th) of Mark Ciddo secured by real property located at 4950 Ross Rd., Sebastopol, California.

  Class 7 Claims. Allowed secured claim of Pinnacle Leasing secured by equipment, tractor, press, ozone machine, labeling machine.

  Class 8 Claims. Allowed secured claim of Mark Ciddo secured by equipment.

  Class 9 Claims. Allowed claims of creditors other than those holding allowed Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims, Class 7 Claims, Class 8 Claims, Class 10 Claims and Class 11 Interests, including, but not limited to, whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court finds the same unsecured in whole or in part.

  Class 10 Claims. Allowed claims of creditors other than those holding allowed Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, Class 5 Claims, Class 6 Claims, Class 7 Claims, Class 8 Claims, Class 9 Claims and Class 11 Interests, whose claims may arise out of the rejection of executory contracts and secured

7

creditors to the extent that the Court finds the same unsecured in whole or in part and which creditors are insiders of the Debtor herein.

<u>Class 11 Interests.</u>  Allowed interests of shareholders of Debtor herein.

The Plan treats the classes as follows:

<u>Class 1 Claims are impaired.</u>  Holders of allowed Class 1 Claims shall be paid in twenty four equal monthly installments of principle and interest at the statutory rate following the effective date of the Plan.

<u>Class 2 Claims are impaired.</u>  Holders of allowed Class 2 Claims shall be placed on a five year plan as provided under California law.  Such holders shall retain its lien on the collateral.

<u>Class 3 Claims are impaired.</u>  Holders of allowed Class 3 Claims shall be paid the amount of its secured claim in full in equal monthly installments of principle and interest at the market rate based upon a 30 year full amortization commencing on the first day of the month following the effective date of the Plan.  Such holder shall retain its lien on the collateral.

<u>Class 4 Claims are impaired.</u>  Holders of allowed Class 4 Claims shall be paid the amount of its secured claim in full in equal monthly installments of principle and interest at the market rate based upon a 30 year full amortization commencing on the first day of the month following the effective date of the Plan.  Such holder shall retain its lien on the collateral.

<u>Class 5 Claims are impaired.</u>  Holders of allowed Class 5 Claims shall be paid an amount equal to such holder's interest in the Debtor's interest in the collateral in equal monthly installments of

8

principle and interest at the market rate based upon a 25 year amortization commencing on the first day of the month following the effective date of the Plan. Such holder shall retain its lien on the collateral for the secured portion of its allowed claim.

Class 6 Claims are impaired. The secured claim of holders of allowed Class 6 Claims shall be determined pursuant to 11 U.S.C. Section 506. To the extent such holder has a secured claim, such holder shall be paid an amount equal to such holder's interest in the Debtor's interest in the collateral at the market rate of interest in monthly installments of principle and interest based upon 30 year amortization. The right of Debtor or any other party interest to obtain a determination of subordination pursuant to 11 U.S.C. Section 510(b) is specifically reserved. To the extent such holder's interest in the collateral is not subordinated, such holder shall retain its security interest in the collateral.

Class 7 Claims are impaired. Holders of allowed Class 7 Claims shall be paid an amount equal to such holder's interest in the Debtor's interest in the collateral in monthly installments of principle and interest at a market rate based upon a 5 year full amortization. Said payments shall commence on the first day of the month following the effective date of the Plan. Such holder shall retain its security interest in the collateral

Class 8 Claims are impaired. Holders of allowed Class 8 Claims shall be paid an amount equal to such holder's interest in the Debtor's interest in the collateral in monthly installments of principle and interest at a market rate based upon a 30 year amortization. Debtor and any other party in interest shall retain rights to request subordination of such claim pursuant to 11 U.S.C.

Section 510(b). Such holder shall retain its security interest in the collateral to the extent of the secured portion of such claim and subject to the rights of parties in interest, including Debtor, to request subordination.

<u>Class 9 Claims are impaired.</u> Holders of allowed Class 9 Claims shall be paid the aggregate sum of $248,000 in 84 equal monthly installments without interest. Such payments shall be disbursed on a prorata basis to such holders on a quarterly basis or more frequently.

<u>Class 10 Claims are impaired.</u> Holders of allowed Class 10 Claims shall be paid the aggregate sum of $100,000 in 90 monthly installments commencing on the 85th month following the effective date of the Plan. The claims of such holders shall be subordinated to all other allowed claims in the case and shall not be paid any distribution until Class 9 Claims are paid in full as herein above provided. Such holders shall have an option on the 1st anniversary of the Effective Date of converting such subordinated claim to equity.

<u>Class 11 Interests are impaired.</u> Holders of allowed Class 11 Interests shall retain such interests subject to the terms of the Plan provided that additional operating capital is contributed by such holders in the aggregate amount of $125,000 prior to the 1st anniversary of the Effective Date of the Plan. The property of the estate shall revest in the Debtor on the effective date of the Plan subject to the terms of the Plan.

THE PLAN PROVIDES FOR THE MEANS OF EXECUTION AS FOLLOWS:

1. Debtor shall continue to operate its custom wine making, storage and distribution business at its present location with its

10

current employees.

2. Debtor shall continue to market its new product through standard alcoholic beverage distribution means.

3. From the proceeds of sale of the products and services, Debtor will pay in monthly installments claims commencing on the first day of the month after the effective date of the Plan and as provided herein as follows:

    a. A five year tax Plan with the County of Sonoma to retire the balance due on the secured tax roll;

    b. The amount due, if any, on taxes which are entitled to a Section 507 priority;

    c. A payment to the holder of the allowed Class 3, 4, and 7 Claims as herein provided.

4. Debtor shall deposit a sum equal to 1/84th of the aggregate sum of $248,000 into a disbursing account each month commencing on the Effective Date of the Plan. Disbursements shall be made from such account to holders of allowed Class 9 Claims on a prorata basis on a quarterly or more frequent basis.

5. Debtor shall solicit equity investment in the entity and may dilute the present equity by as much as 80% to obtain additional capital. Said additional capital shall be invested on account of Class 10 Interests in a sum no less than $125,000.

6. Debtor shall request a determination of the value of the collateral of Class 3, Class 4, Class 5, Class 6 and Class 8 Claims pursuant to Section 506 of the Code. The Motion shall be filed on or before thirty (30) days following the Effective Date.

7. No party shall take any action against the Debtor, his assets, or assets of the estate inconsistent with the terms of the

11

within Plan.

8. Debtor shall continue to operate its business of custom wine making and wine making of grapes purchased. Debtor shall continue to sell such product on the bulk market, through brokers and distributors and direct sales. Debtor shall continue to market its product produced from grape as a substitute for distilled alcohol through distributors.

9. The Debtor shall comply with post confirmation reporting requirements to the U.S. Trustee and payment of U.S. Trustee fees post confirmation until entry of Final Order as required by law. Nothing contained in the Plan shall impose or expand the requirements for reporting and payment of fees as set forth by statute and/or case law. In the event the case is converted to a case under Chapter 7, the assets shall revest in the Chapter 7 estate. Debtor shall be the disbursing agent absent appointment of another person or entity by the Court at the time of confirmation.

10. Debtor may object to claims as appropriate and all rights of counterclaim and setoff as to any party filing a claim against the estate are specifically reserved.

IV

The assets and liabilities of the Debtor are set forth in the Debtor's Schedules, on file with the Court. The Proponent believes that the terms of the Plan are feasible, and that it will be able to perform under the Plan. The Debtor requests confirmation of the Plan.

Dated: 3/18/10                                  DAVID N. CHANDLER, p.c.


                                                By: */s/David N. Chandler*
                                                DAVID N. CHANDLER
                                                Attorney for Debtor